**In re Philip Adam MILLER and Carlotta Florence Miller, Debtors.**

**Bankruptcy No. 84–05499.**

United States Bankruptcy Court,
D. North Dakota.

Oct. 21, 1985.

Max Rosenberg, Bismarck, N.D., for debtors.

James Coles, Bismarck, N.D., for claimants.

William Westphal, U.S. Trustee, Minneapolis, Minn.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on consideration of the Debtors' objections to the claims of Midway Asphalt Paving, Inc., Dale's Plumbing & Repair, Inc., Kalberer's Heating, Inc., and Great Plains Supply Company (collectively referred to as The Creditors). The Debtors' objections were filed on July 9, 1985, and the matter came on for hearing on September 26, 1985.

### 1.

The Debtor, Philip Adam Miller, and an individual named Robert R. Tompkins in 1981 formed a construction company under the name P & B Construction, Inc. The company was engaged in building construction in the Sidney, Montana, area when financial problems ensued. The Creditors herein named are subcontractors of P & B Construction, Inc. who, in 1982, commenced an action in the Montana State Courts against the Debtor and Tompkins personally for recovery of sums due them in consequence of labor and services provided to P & B Construction, Inc. The total amounts originally due to the named Creditors are:

| | |
|---|---|
| Midway | $22,584.97 plus interest |
| Dale's | 4,438.35 plus interest |
| Kalberer's | $8,841.54 plus interest |
| Great Plains | 3,411.60 plus interest |

After the Debtors filed for relief on October 8, 1984, The Creditors filed their proofs of claim in these respective amounts.

In January 1983, the Debtor, as co-Defendant in the state court action, individually entered into a Stipulation with each of The Creditors for the compromise and settlement of the state court action. The Stipulation in each instance (denoted "Stipulation For Compromise and Settlement") was signed on January 26, 1983, and the language of each of the respective Stipulations as material to the discussion herein is identical. The Stipulations provide that The Creditor will dismiss the law suit as to Phil Miller one year from the date of execution conditioned upon certain payments being made and that, in the event Miller fails to fully comply with the terms of the agreement, The Creditor shall have the right to proceed to obtain judgment against him. The conditions of compromise require that The Creditors, plus one other whose claim is not in issue, each receive a cash payment by January 26, 1983, a further payment 39 days thereafter, and a final payment one year from the date of execution. The totals of the compromised payments due The Creditors under the terms of the Stipulation are:

| | |
|---|---|
| Midway | $8,140.00 plus interest |
| Dale's | 1,740.00 plus interest |
| Kalberer's | 3,780.00 plus interest |
| Great Plains | 1,360.00 plus interest |

Concurrent with execution of the Stipulations, the Debtors gave The Creditors' attorney a $5,000.00 check, the proceeds of which were proportionately distributed between The Creditors, including the additional creditor whose claim is not addressed herein. This sum was sufficient to exactly satisfy the initial payments due each of The Creditors, plus the initial payment due the non-party creditor.

As specified in the Stipulation, the Debtor executed a series of promissory notes in favor of each of The Creditors representing the two later payments. These notes were signed by the Debtor without qualification

and, at the hearing, Philip Miller acknowledged that the debts are his. The notes reflect a remaining obligation to each of the four Creditors as follows:

| Midway | $6,105.00 plus interest |
| Dale's | 1,305.00 plus interest |
| Kalberer's | 2,835.00 plus interest |
| Great Plains | 1,020.00 plus interest |

Robert Tompkins is now deceased and, while he was a co-Defendant in the state court law suit, he was not a party to the Stipulations, nor did he sign the notes. After his death, his estate made a lump sum settlement payment to the four Creditors of $5,100.00 which was distributed to them pro rata.

The Debtor, Philip Miller, due to financial conditions, was unable to make the subsequent payments required, resulting in The Creditors filing proofs of claim for the original balances. The Debtor, while acknowledging that the obligations are his, argues that the obligations owing to The Creditors are as reflected by the notes less the $5,100.00 pro rata payment made by the Tompkins estate.

### 2.

The Debtors argue that the Stipulations constitute a valid compromise of the original claims and operate as a bar to the claims being now asserted in the amount of the original indebtedness. It is the Debtors' position that the Stipulations constituted a novation by which a new obligation was substituted for the original, the effect being to completely extinguish the original. The Creditors, on the other hand, argue that the Stipulations were not in the nature of a novation but were, in their effect, in the nature of an accord, the satisfaction of which was never accomplished, thereby giving them the right to pursue the original indebtedness.

 Although the Debtors characterize the nature of the Stipulations as a compromise and settlement, in legal effect their objection is one of novation. As a concept, novation is similar to accord and satisfaction and may even, in certain instances, constitute satisfaction. Both at common law and by statute, novation is the substitution of a new obligation for an existing one. It may arise by mutual agreement of the parties that an existing obligation be discharged by the substitution of a new obligation. *Tannhauser v. Shea,* 88 Mont. 562, 295 P. 268 (1930); 58 Am.Jur.2d *Novation* § 1. The intent of the parties to effect a discharge of the original obligation by novation must be clear and definite. 58 Am.Jur.2d *Novation* §§ 12, 20. If a new obligation is substituted for the original with the intent that the old be supplanted thereby, the parties' obligations thereafter are defined by the new agreement irrespective of whether the agreement is later breached. Section 279 of the Restatement 2d of Contracts, with regards to substituted contracts, provides:

(1) If an obligee accepts in satisfaction the obligor's duty a performance offered by the obligor that differs from what is due, the duty is discharged.

(2) The substituted contract discharges the original duty, and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty.

This is, in legal effect, the nub of the Debtors' argument. By way of substitution for their original obligation to The Creditors, the Debtors paid $5,000.00 and executed promissory notes which were accepted by The Creditors as a substitute for their original claims.

 Distinguished from novation is the concept of accord and satisfaction. Where novation connotes a present extinguishment of an existing obligation by substitution with a new one, accord is merely the agreement to accept a different method of performance and satisfaction of the existing obligation. The original or existing obligation, however, is not extinguished until the agreed-upon substituted performance is fully executed. The concept of accord and satisfaction is defined in the restatement as:

(1) Accord is a contract whereby an obligee promises to accept a stated perform-

ance in satisfaction of the obligor's existing duty.

(2) Until performance of the accord, the original duty is suspended unless there is a breach of the accord by the obligor as discharges the new duty of the obligee to accept the performance in satisfaction. If there is such a breach, the obligee may enforce either the original duty or any duty under the accord.

Restatement 2d *Contracts, Accord and Satisfaction* § 281. When an agreement is in the nature of a novation, the original obligation is extinguished merely by the fact of a substituted obligation. With an accord, however, only full performance of the obligation by the obligor results in satisfaction sufficient to bar assertion of the original claim. 1 Am.Jur.2d *Accord and Satisfaction* § 2; *Lehde v. National Union Fire Ins. Co. of Pittsburgh, PA,* 46 N.D. 162, 180 N.W. 56 (1920); *Webster v. McLaren,* 19 N.D. 751, 123 N.W. 395 (1909).

■ The concepts are closely allied and often difficult to distinguish in a given case. So close are they that a novation may constitute execution of an accord in the instance where the new agreement constituting the accord is in and of itself accepted by the parties as satisfaction. However, faced with a fact situation that plausibly could constitute either novation or accord and satisfaction, novation is never presumed; and the party asserting its existence must prove that the intent of the parties was to presently extinguish the original obligation by a replacement obligation. No vestige of the original obligation nor reference to it should remain nor have any effect upon the existence or compliance with the substituted or new obligation. The intent of the parties in this regard must, as mentioned, be clearly established.

■ In the present instance, the facts illustrate that the parties desired to compromise and settle each of the respective Creditors' original claims and, towards that end, executed the documents captioned "Stipulation For Compromise and Settlement". By this document, The Creditors agreed to dismiss their suits on the original claims providing the Debtor: (1) made a series of three cash payments; (2) assigned to The Creditors his claim to assets held by the estate of Tompkins; (3) executed notes as evidence of the required cash payments. The Stipulations, in their final paragraph, provide that failure to comply with the conditions would leave the respective Creditor free to pursue recovery on its original claim. The Stipulation cannot be regarded as a novation. Clearly, whether the original obligation was to be discharged thereby depended upon the Debtor *first* meeting the three conditions precedent. The notes are not, in and of themselves, new or substituted obligations but are merely evidence of the required cash payments. It is the cash payments that are critical. The Court cannot conclude from the facts that the parties intended a novation. Even if a novation could be found to exist, at best it would amount to nothing more than a conditional novation because extinguishment of the original obligation was made contingent upon the three conditions and not upon the mere execution of the Stipulation. The Stipulations must be regarded in the nature of an accord, the satisfaction for which remains unexecuted. Accordingly, because the satisfaction in the nature of cash payments was breached, The Creditors' original claims are not extinguished and may be asserted in their original sums, minus credit for the $5,000.00 received from the Debtor and the $5,100.00 received from the estate of Robert R. Tompkins.

IT IS SO ORDERED.