**In re GARRETT ROAD SUPERMARKET, INC., Debtor.**

**Bankruptcy No. 88–11524S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 17, 1988.

Steven R. Fischer, Gary A. Rosen, Philadelphia, Pa., for debtor.

Michael J. Halprin, Philadelphia, Pa., for NCB Development Corp.

James J. O'Connell, Ass't. U.S. Trustee, Philadelphia, Pa.

J. Scott Victor, Philadelphia, Pa., for Creditors' Committee.

Pace Reich, Philadelphia, Pa., for Wetterau.

Terry D. Weiler, Wyomissing, Pa., for Wetterau.

Virginia H. Miller, Philadelphia, Pa., for ICA Revolving Loan Fund.

Peter F. Rosenthal, Philadelphia, Pa., for H.P. Sales Corp.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The motion before us in the instant Chapter 11 case presents principally one question which we answer in the affirmative: may a debtor obtain an extension of the 60–day period after a bankruptcy filing to assume or reject an unexpired lease on nonresidential real property under 11 U.S. C. § 365(d)(4) when it *files* the motion within the 60 days, but the court does not *rule* on the motion within the 60–day period?

The instant case was filed by the Debtor, an employee-owned corporate supermarket, on May 2, 1988. From the outset, the corporate entity from which the Debtor purchased its business and from which it sub-leases it sole business premises, Wetterau, Inc. (hereinafter referred to as "Wetterau"), and its related corporate entities, have vigorously contested its every move. Apparently, Wetterau's position was hardened by the fact that, on the date of filing, the Debtor made certain payments to other parties, including its counsel, on the morning of May 2, 1988, in the amount of about $80,000.00, but stopped payment on checks issued that date to Wetterau for goods in the amount of $97,-000.00. On its part, the Debtor contends that it was forced into bankruptcy by Wetterau's unjust attempt to declare its subordination agreement with the Debtor in default. Much of this will be sorted out in a trial of an adversary proceeding for reclamation commenced by Wetterau against the Debtor on May 6, 1988, and in which the Debtor has filed a counterclaim, at Adversary No. 88–0582S, presently scheduled for trial on September 7, 1988.

Wetterau vigorously contested the Debtor's motion to use cash collateral on even an interim basis, at a hearing on May 3, 1988. Ultimately, it relented, although other secured creditors joined it in negotiating a series of cash collateral stipulations which have usually extended for only two-week periods and place substantial weekly reporting requirements upon the Debtor.

On June 29, 1988, the Debtor filed the motion before us, requesting that the 60–day period from the May 2, 1988, filing set forth in § 365(d)(4) for the Debtor to determine whether to assume or reject the sublease of its store property from Wetterau be extended until the later of October 1, 1988, or ten days after this court's judgment in Adversary No. 88–0582S. Wetterau's lease appears to have commenced on September 1, 1982, and to terminate on September 8, 1998. The sublease was exe-

cuted on October 17, 1986, and provided that the Debtor's sublease extended for the 12–year term balance, rendering this lease a matter of considerable importance.

The Debtor did not request expedited consideration of this motion. It was listed by the Clerk's office for a hearing on July 27, 1988, in the ordinary course.

Consequently, on July 19, 1988, Wetterau filed an answer requesting, *inter alia,* that the Debtor's motion be dismissed because the court could not, at that point, possibly grant the Debtor's motion within the 60–day period after the Debtor's bankruptcy filing.

On the hearing date, Wetterau appeared to contest the motion. Counsel for the Official Unsecured Creditors' Committee appeared to support the motion, and the Debtor's counsel advised that the other secured creditors supported it as well. The only witness at the hearing was John Paul Lanni, the produce manager of the store and the president of the Debtor corporation.

Mr. Lanni testified that the Debtor's ability to assume or reject the lease within the normal, 60–day period was hampered by the contests over, and collection of data required by, the cash collateral orders; absence of certain records in the possession of Wetterau; and uncertainty as to how to proceed in the face of a purchase offer for the store. Most of Wetterau's cross-examination was devoted to rehashing the facts concerning the issuance and dishonoring of its checks on May 2, 1988, and contending that these facts constituted generalized equities against the Debtor. Mr. Lanni also testified that all post-petition rents had been paid to and accepted by Wetterau. This fact is apparently uncontested.

At the hearing, the Debtor's counsel presented us with a Memorandum of Law in favor of the motion. We raised *sua sponte* the relevance of the decision of our local district court in *In re National Paragon Corp.,* 74 B.R. 180 (E.D.Pa.1987), to the question before us. Wetterau was accorded until August 5, 1988, to file a reply to the Debtor's Memorandum. We expressly requested that Wetterau address the *National Paragon* decision, whether it was binding on this court, and cite a decision of Chief Judge Twardowski of this court which Wetterau claimed supported its position.

■ The issue before the court requires interpretation of 11 U.S.C. § 365(d)(4), which was added in the 1984 amendments to the Code and reads as follows:

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Prior to the 1984 amendments, assumption or rejection of nonresidential real property leases were not treated any differently than any other executory contracts under § 365(d)(2), i.e., they were not required to be assumed or rejected prior to confirmation unless the court, on request of a party, ordered that a decision be made by the debtor in a shorter, specified time. When read in tandem with § 365(d)(3), added in the same amendments and requiring tenants to perform all obligations of a non-residential lease pending its assumption or rejection, it seems clear that the purpose of this Code section was to prevent Debtor tenants from not paying rent and stringing along landlords for free rent by delaying in assuming or rejecting leases. As Collier states, however, the short time-period set forth in this amendment, probably unintentionally, "creates a substantial trap for the unwary." 2 COLLIER ON BANKRUPTCY, ¶ 365.03, at 365–31 n. 18b.

Indeed, § 365(d)(4) does create such a trap in two similar scenarios: (1) Where the debtor moves to assume a nonresidential lease within the 60–day period, but the bankruptcy court does not schedule a hearing on the motion until after the 60–day

period. In this scenario, the aggressive landlord may argue that the failure of the debtor to assume or reject the lease "within 60 days after the date of the order for relief" renders such a lease to be "deemed rejected;" (2) Where the debtor, as here, files a motion seeking additional time to determine whether to assume or reject the lease within the 60–day period, but, again, the bankruptcy court does not hear the motion within the 60–day period. In this scenario, the aggressive landlord may argue that the failure of the court to "fix" the additional time within the 60–day period causes the lease to be "deemed rejected."

Both hypothetical arguments of the aggressive landlord appear equally to make sense given the literal wording of the statute. However, the question is whether such readings make logical sense, given the obvious purpose served by § 365(d)(4).

The earliest decisions interpreting § 365(d)(4) appeared to have preferred the literal wording of the statute over logic. Thus, the earliest interpretative cases, arising under the first scenario, held that debtors who failed to obtain a court order assuming a nonresidential realty lease within 60 days of the date of filing were held to have deemed to have rejected the leases in issue. *See In re House of Emeralds,* 57 B.R. 31 (Bankr.D.Hawaii 1985); *In re Southwest Aircraft Services, Inc.,* 53 B.R. 805 (Bankr.C.D.Cal.1985), *aff'd,* 66 B.R. 121 (Bankr. 9th Cir.1986), *rev'd,* 831 F.2d 848 (9th Cir.1987); and *In re By–Rite Distributing, Inc.,* 47 B.R. 660 (Bankr.D.Utah), *rev'd,* 55 B.R. 740 (D.Utah 1985). However, as is noted, two of these decisions were reversed. The third, *House of Emeralds,* was overruled by the bankruptcy judge who rendered it in light of the *By–Rite* reversal in *In re Diamond Head Emporium, Inc.,* 69 B.R. 487, 492–93 (Bankr. D.Hawaii 1987).

Consideration of cases raising the second scenario resulted most notably in a split between Bankruptcy Judges Holland and Parente, both sitting in the Eastern District of New York. Judge Holland repeatedly held that the literal language of § 365(d)(4) precluded any extension of the time to assume or reject a lease after the 60–day period passed. *See, e.g., In re House of Deals of Broward, Inc.,* 67 B.R. 23 (Bankr. E.D.N.Y.1986); and *In re Alba Press, Inc.,* 55 B.R. 127 (Bankr.E.D.N.Y.1985). Judge Parente repeatedly granted motions filed, like the instant motion, within the 60–day period, but not ruled upon until thereafter. *See In re Musikahn Corp.,* 57 B.R. 938, 941–42 (Bankr.E.D.N.Y.1986); and *In re Unit Portions of Delaware, Inc.,* 53 B.R. 83 (Bankr.E.D.N.Y.1985). In late 1987, the District Court resolved this split of authority in favor of Judge Parente in *Tigr Restaurant, Inc. v. Rouse S.I. Shopping Center, Inc.,* 79 B.R. 954 (E.D.N.Y.1987). The *Tigr Restaurant* result was followed on facts analogous to those presented by the instant motion in the neighboring Southern District of New York in *In re Wedtech Corp.,* 72 B.R. 464 (Bankr.S.D.N.Y.1987). *Accord, In re Bygaph, Inc.,* 56 B.R. 596, 601 (Bankr.E.D.N.Y.1986).

We have located only one other case which has not been specifically reversed or overruled which follows the literal reading analysis of § 365(d)(4) which was articulated in the early interpretative cases.[1] In *In re Coastal Industries, Inc.,* 58 B.R. 48 (Bankr.D.N.J.1986), the court, presented with the second scenario, denied a motion for an extension of time to assign or reject a lease because it was not heard in the 60–day period. However, the court relied exclusively upon the reasoning of the bankruptcy courts in *Southwest Aircraft* and *By–Rite Distributing,* both of which decisions were subsequently reversed.

The *National Paragon* decision of our district court must be considered in light of

1. Cases such as *In re Ho's, Ltd.,* 82 B.R. 342 (Bankr.M.D.Pa.1988); *In re BSL Operating Co.,* 57 B.R. 945, 951 (Bankr.S.D.N.Y.1986); *In re Taynton Freight System, Inc.,* 55 B.R. 668 (Bankr.M.D.Pa.1985); and *In re Haute Cuisine, Inc.,* 57 B.R. 200 (Bankr.M.D.Fla.1986), present

the distinct scenario of a debtor who fails to file a motion to assume or reject a lease *or* a motion to extend the period to assume or reject a lease within the 60–day period. *See also In re Boston Business Machines,* 87 B.R. 867, 872–74 (Bankr. E.D.Pa.1988).

the foregoing decisions and trends. There, the court had before it the first scenario described above. Reversing an order of this court adhering to the literal-reading result of the early *Southwest Aircraft* and *By–Rite Distributing* cases, the court held as follows, 74 B.R. at 181:

> I am persuaded by the reasoning of those courts determining that section 365(d)(4) does not require court approval within the specified time period and follow their position without reiterating the analysis here. *This position is reinforced by the fact that section 365(d)(4) is silent as to court approval of assumption or rejection within any time period, while it expressly requires court approval of an extension within sixty days,* and other sections of the Bankruptcy Code requiring court action within a specified time period provide so expressly. *See, e.g.,* 11 U.S.C. § 362(e). Therefore, I conclude that the debtor's filing of a motion to assume the sublease within the extended period stipulated by the parties and ordered by the bankruptcy court was sufficient under section 365(d)(4) despite the lack of court approval within that period. Accordingly, the February 12, 1986, order of the bankruptcy court will be reversed (emphasis added).

The position of Wetterau as to the significance of *National Paragon* in the decision-making process here has gone an interesting metamorphosis in the nine-day period between the hearing and the filing of its Memorandum of Law. In argument at the hearing of July 27, 1988, both the court and Wetterau's counsel, a member of the same firm which had represented the debtor in *National Paragon,* assumed that the result of that case directly supported the position of the Debtor here. Therefore, counsel vigorously argued that a single district court decision did not bind this court and that we should instead follow an unnamed decision of Chief Judge Twardowski, the existence of which we questioned, that held to the contrary.

In its Brief, Wetterau *now* argues that we must *follow* the portion of the quoted passage from *National Paragon* emphasized above. No decision of Chief Judge Twardowski either way on this issue was produced.

We decline to hold that the emphasized portion of the passage of *National Paragon* represents any sort of holding in favor of Wetterau on the issue at bench. In considering only a case presenting the first scenario described above, the *National Paragon* decision follows the trend of virtually every recent case in expressly ruling in favor of the debtor's right to assume a nonresidential lease by means of a motion filed but not heard before the expiration of the 60–day period.[2] The emphasized language does not even rise to the level of dictum as to the proper result in the second scenario. It merely suggests that the court finds the language of § 365(d)(4) to be *more* literal in requiring an extension request to be decided within 60 days than the language requiring a motion to assume within that time period.[3]

We do not believe that any real distinction can be drawn between the two scenarios in reading § 365(d)(4). Pertinent to the first scenario, the language of § 365(d)(4)

---

**2.** In its Brief, Wetterau suggests that numerous other courts have agreed with the reasoning of the lower court in *Southwest Aircraft,* directly contrary to the decision in *National Paragon.* However, the cases in that string cite have either been reversed (*By–Rite* lower court), overruled by later decisions (*House of Emeralds, House of Deals* ), involve the distinct factual pattern of a motion filed beyond the 60–day period (*Haute Cuisine, BSL* ), or are simply misread by Wetterau and actually hold to the contrary (*Bygaph* ).

**3.** The *National Paragon* quote at page 518 *supra* likens the absolute nature of the 60–day period

for obtaining an extension of the time to assume or reject a lease to the 30–day period in which a bankruptcy court must decide a motion for relief from the automatic stay before the stay dissolves, in 11 U.S.C. § 362(e). However, it is clear that the period set forth in § 362(e) can also be extended where, similar to here, the simple inability of the court to rule on a pending motion in a certain period of time could lead to termination of the automatic stay. *See In re Clark,* 69 B.R. 885, 891–92 (Bankr.E.D.Pa. 1987); and *In re Brusich & St. Pedro Jewelers, Inc.,* 28 B.R. 545, 549 (Bankr.E.D.Pa.1983).

quite literally requires the trustee to actually "assume or reject an unexpired lease" within the 60–day period. This can be done only by the court's ordering a lease assumed or rejected. *See In re St. Mary Hospital, Hiser v. Blue Cross of Greater Philadelphia*, 89 B.R. 503, 507–08 (Bankr. E.D.Pa.1988); and *In re Metro Transportation Co.*, 87 B.R. 338, 342–43 (Bankr. E.D.Pa.1988) (implicit assumption of an executory contract by anything less than a court order specifically authorizing assumption is ineffectual). No court has yet suggested that the result in the second scenario should be different from that in the first scenario. Moreover, making such a distinction would be nonsensical. The Code section in issue, § 365(d)(4), speaks of one and the same 60–day period. If a filing to assume or reject within the 60–day period is held to extend the time until a decision is reached by the bankruptcy court, the filing of a motion to extend the time within the same 60–day period should have the same result.

The reasoning of the cases followed by *National Paragon* applies equally to each of the two scenarios. In *Wedtech* and *Unit Portions*, the courts suggest that their result is required by looking beyond the literal words of the statute to avoid a result that is absurd. 72 B.R. at 469–71; and 53 B.R. at 84–85. *Cf. In re Daily Corp.*, 72 B.R. 489, 493 (Bankr.E.D.Pa.1987). In *Tigr*, the court points to the avoidance of inequities and of windfalls to landlords simply because of a bankruptcy filing. 79 B.R. at 956–57. *Cf. Boston Business Machines, supra*, 87 B.R. 867, 870–71; and *In re Adams*, 65 B.R. 646, 647–49 (Bankr.E.D. Pa.1986) (last clause of § 365(d)(4) should not be read to enhance the landlord's position due solely to the debtor's bankruptcy filing). We could also point to strong public policy against forfeitures in the law, *see In re Sudler*, 71 B.R. 780, 785 (Bankr.E.D. Pa.1987), and our concept of § 365 as a tool of the debtor rather than a weapon to be utilized to deny a debtor of a leasehold interest. *Cf. In re Fox*, 83 B.R. 290, 294 (Bankr.E.D.Pa.1988). All of these lines of reasoning apply equally to allowing a time-ly filing to suffice to meet the 60–day limit in both scenarios.

Finally, we note the practical consequences of a divergent holding as to the two scenarios as applied to the facts of the instant motion. The Debtor should, at the very least, be accorded the opportunity to have its instant motion be considered as a motion to assume (or reject) the lease. The direct holding of *National Paragon* would render such a motion timely. Therefore, at the very least, we should allow the Debtor to now decide whether to assume or reject the lease. Our order, by reducing the time sought by the Debtor to make this decision, yields almost the same practical result.

■ Again referencing the instant facts, we would be inclined to allow the Debtor's motion on the facts here on alternative grounds. As in *Haute Cuisine*, we believe that the landlord, by accepting rents and not pressing the Debtor for a determination on assumption or rejection prior to the end of the 60–day period, has waived its right to object to this motion. *See also In re Ranch House of Orange–Brevard, Inc.*, 78 B.R. 323 (Bankr.M.D.Fla.1987). The Debtor's regular payment of rents, which we shall order it to continue, avoids the problem of the non-paying tenant who declines to assume or reject a lease, as is targeted by the operation of §§ 365(d)(3) and (d)(4) in tandem. The Debtor's equities here are also strengthened by our observation that the landlord is one of a large, powerful group of companies which has distracted the reorganization efforts of a modest employee-owned business, when the assumption or rejection of the lease was well-known by the landlord to be crucial to the Debtor's reorganization. Instructively, all of the Debtor's other creditors support it in this motion.

We believe that the Debtor is exercising wise business judgment in wishing to put off making a decision as to whether to assume or reject the lease in issue immediately. *Compare Metro Transportation, supra*, 87 B.R. 338, 343; and *In re W. & L. Associates*, 71 B.R. 962, 966–67 (Bankr.E. D.Pa.1987). We do not agree with Wetterau that the Debtor's allegedly wrongful

conduct on May 2, 1988, should be punished by denial of the instant motion.

■ Given the numerous court appearances required of the Debtor and the difficult legal issues presented by this case, some extension of the § 365(d)(4) 60–day period for the Debtor certainly appears warranted by good cause. We also note that the Debtor has apparently engaged in serious negotiations to sell its business, and that a motion to approve a comprehensive Asset Purchase Agreement was filed on August 3, 1988, and is scheduled for a hearing on objections by (who else?) Wetterau on August 17, 1988. We acknowledge that presence of difficult and complex litigation in Adversary No. 88–0582S, against Wetterau, scheduled for trial on September 7, 1988.

However, we are not prepared to execute the Debtor's proposed order in the form presented, because it tends to give the Debtor a longer period to extend the time to assume or reject the lease than may be absolutely necessary. We will therefore extend the time for the Debtor to assume or reject the lease to, simply October 1, 1988. Furthermore, we will specifically direct the Debtor to continue making all rent payments in the interim. However, we will also expressly provide in our Order that the date for deciding whether to assume or reject the lease may be extended again if a further request is made by motion filed on or before September 9, 1988, and listed for a hearing on or before September 29, 1988. In this way, Wetterau or any other creditor can contest any further request for an extension before it becomes effective.

An Order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 17th day of August, 1988, after a hearing of July 27, 1988, on the Debtor's Motion to Extend Time to Assume or Reject the unexpired sublease between the Debtor and Wetterau, Inc. dated October 17, 1986, relating to realty at 1500 Garett Road, Upper Darby, Pennsylvania 19082, and upon consideration of the Memoranda of Law submitted by the parties, is hereby ORDERED as follows:

1. The Motion is GRANTED in part.

2. The time for Debtor to assume or reject the Sublease shall be extended to October 1, 1988, on the express condition that the Debtor continue to timely make all rental payments to Wetterau falling due hereafter.

3. The Debtor may request a further extension of the time to assume or reject the aforesaid Lease provided it files a motion making such a request on or before September 9, 1988, and a hearing on same is conducted on or before September 29, 1988.