**In re SENIORIS ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 386–32485–A–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 12, 1987.

Dixie L. Randle, Houston, Tex., for movant.

Thomas A. Bittner, Dallas, Tex., for debtor.

MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

This proceeding concerns leases of non-residential real property. Senioris Enterprises, Inc. ("Debtor") is the lessee of several locations in shopping centers where it conducts a restaurant business called "The Stuffed Pocket". Homart Development Co. ("Homart") is the lessor of at least two of these locations, the Willowbrook Mall and the Deerbrook Mall, both in the Houston, Texas area. Homart has motioned for payment of administrative expenses regarding the Deerbrook Mall location and motioned for relief from the automatic stay regarding the Willowbrook Mall location. The court addresses the motion for relief from the automatic stay in this opinion. Debtor has responded to the automatic stay motion by presenting a motion to assume and assign the subject lease, a brief, and a subsequent motion for hearing to permit additional evidence and argument.

This is a core proceeding under 28 U.S.C. secs. 157 and 1334, and 11 U.S.C. sec. 365. This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Debtor filed its petition under chapter 11 of the Bankruptcy Code on February 7, 1985 in the Southern District of Texas. On May 21, 1986 the case was transferred to the Northern District of Texas, Dallas Division. On October 21, 1986 the motion for relief from the automatic stay was filed by Homart. Debtor filed its response and motion to assume and assign the lease on November 12, 1986. No previous entries in the record reflect an intent of the debtor to assume the lease and there is no allegation of any manifestation of an intent to assume the lease prior to April 9, 1985, the date upon which Homart asserts the lease was deemed rejected pursuant to 11 U.S.C. sec. 365(d)(4).

There is no question that Homart has received the rental payments for each of the twenty two (22) months between February 1985 and November 1986. Homart does allege a breach of the lease provision that requires Debtor to participate in certain promotional activities and the lease provision requiring proof of insurance. The principal theory advanced by Debtor is that Homart has waived the protection afforded lessors of non-residential real property under 11 U.S.C. sec. 365(d)(4), or that Homart is estopped from asserting same. Debtor also raises a point regarding the adequacy of the notice given by Homart of its seeking this judicial determination of the vitality of the lease.

■ Debtor further asserts that the lease has been assigned, as of February, 1981 (its inception), to an entity called J.L. & G., Inc., which is owned by the principal shareholder of Debtor. The assignment is allegedly manifested by the payment of rentals with checks from J.L. & G., Inc., and assented to by Homart by virtue of the acceptance of these checks. There is no written lease or assignment agreement evidencing this allegation. The only lease in the record names Debtor as the lessee.

The court finds no reason to dwell on this point other than to note that, absent consent from Homart, assignment of a lease by the lessee is prohibited under Texas law. Tex.Prop.C. sec. 91.005 (Vernon 1984); *American National Bank & Trust Co. v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). Even if the court were to give credence to the alleged assignment between these purported lessees, the lack of the essential unequivocal communication of the assignment prevents the court from according it any effect. *In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bankr.D.Minn.1986).

In a similarly unsubstantiated argument Debtor asserts that it and Homart have entered into a new lease, the terms of which are the same as the lease of record, but for which no writing exists. No case for a novation or an accord and satisfaction is shown by the record. *In re Miller*, 54 B.R. 710 (Bankr.D.N.D.1985). The court considers this argument as subsumed within the Debtor's arguments of waiver and estoppel discussed *infra*.

■ Debtor also asserts that the automatic stay applicable in a different bankruptcy case prevents an eviction by Homart. The principal shareholder of both Debtor and J.L. & G., Inc., John Senioris, is an involuntary debtor in case number 86–01610–H3–11. A number of other entities are also named as alleged debtors in the involuntary proceeding, but J.L. & G., Inc. is not among them. Since John Senioris owns the alleged assignee of the lease, relief from the stay in the instant case will do no good for Homart since the possessory rights of J.L. & G., Inc. are protected by the stay applicable in 86–01610–H3–11; or so Debtor argues.

It has been settled that the ordinary distinctions between different legal entities are respected in bankruptcy matters. *In re Loughnane*, 28 B.R. 940 (Bankr.D.Colo. 1983). Thus, even if J.L. & G., Inc. has a claim to the lease in question or a possessory interest in the premises, it is a distinct entity from both Senioris Enterprises and John Senioris. The automatic stay in the

John Senioris case will not affect the lease because, even though John Senioris is the principal equity holder of both of the purported lessees, that ownership interest is not sufficiently affected by actions regarding the lease to warrant consideration of the stay. *In re Loughnane, supra.*

The only substantial issue raised in this contested matter is the waiver and estoppel theories of Debtor. It is true that one reported decision gave effect to similar contentions under similar circumstances. See *In re T.F.P. Resources, Inc.,* 56 B.R. 112 (Bankr.S.D.N.Y.1985). In other cases the theories of waiver or estoppel have been considered and applied, but the contexts of these cases differ significantly from the facts of *T.F.P. Resources* and the case at bar. For example, in *Matter of Curio Shoppes, Inc.,* 55 B.R. 148 (Bankr.D.Conn. 1985), the bankruptcy court applied state law principles of waiver in rejecting a lessor's claim that a lease had terminated; and employed equitable powers under the equitable nature of bankruptcy jurisdiction to prevent the perceived injustice that would result from the "deemed rejected" result apparently mandated by the Bankruptcy Code when assumption is not timely. Similarly, it was held that under the appropriate circumstances the principles of estoppel and waiver remain available to parties in bankruptcy despite an express rejection of an unexpired lease. *In re Ranch House of Orange-Brevard, Inc.,* 773 F.2d 1166 (11th Cir.1985).

After a review of these decisions, the court finds that *Curio Shoppes* represents an instance when waiver and estoppel may apply in the context of determining the rights of the debtor under a lease of nonresidential real property at the outset of a bankruptcy case. There, after a dispute with the lessor could not be resolved favorably, the debtor filed bankruptcy and the court found that the lessor's acceptance of rental checks between an alleged breach of the lease and the bankruptcy filing constituted a waiver of the breach. However, it was what the court styled "equitable considerations" that provided the rationale for permitting assumption of the lease outside of the 60 day period allotted under 11 U.S.C. sec. 365(d)(4), rather than any waiver by the lessor of its protections under the assumption proceedure of sec. 365.

*Ranch House of Orange-Brevard* concerned an unfortunate but apparently inadvertent situation in which waiver and estoppel might apply. There, the debtor's intent to assume a certain lease was not communicated to the lessor prior to confirmation of a plan that arguably rejected all leases not assumed. The Court of Appeals reversed the bankruptcy court's conclusion that as a matter of law estoppel and waiver were not available once express rejection of an unexpired lease had occured. *Cf., Matter of Haute Cuisine,* 57 B.R. 200 (Bankr. M.D.Fla.1986) (express agreement to assume and assign lease between landlord and debtor supported estoppel after the 60-day assumption period had expired).

Contrasted with the court's interpretation of the two cases above is the analysis of *T.F.P. Resources,* 56 B.R. 112. There the court construed 11 U.S.C. sec. 365(d)(3) and (d)(4) as permitting a finding of waiver by the lessor of the "deemed rejected" protection when rentals were accepted after the time for assumption of the lease had ended. This decision has been criticised as a misreading of the statute. *In re Re-Trac Corp.,* 59 B.R. 251, 256 (Bankr.D. Minn.1986). The court there stated:

I believe that Congress included the anti-waiver provision [sec. 365(d)(3)] to resolve any potential conflict between the lessor's rights through the lease under State law and the lessee's newly imposed obligation under Federal Bankruptcy law. Under State law, acceptance of rental payments during the 60-day period might operate to waive any default which might have existed under the lease. By forcing the lessor to accept the rental payments of the lessee during the 60-day period, Congress was putting the lessor in the anamolous position of choosing between complying with the Bankruptcy statute and potentially losing its State law rights for prepetition

defaults. Therefore, I find that the waiver which is referred to in sec. 365(d)(3) is directed toward waiver of the lessor's State law remedies and any other remedies under the Bankruptcy Code and does not imply the ability to retroactively extend the time for assumption of the lease. *In re Las Margaritas, Inc.* 54 B.R. [98] at 99 [ (Bkrtcy.D.Nev.1985) ].

 In the remainder of the opinion the court makes it clear that the principles of waiver and estoppel have very little play, if any, in the context of the sec. 365(d)(3)–(4) performance and assumption or rejection requirements. This decision appears to this court to accurately state the law applicable to the case at bar. I disagree with the analysis of *T.F.P. Resources, supra,* and find the analysis of *Re-Trac Corp.,* to be correct. Thus, the court will not find a waiver based on the acceptance of rentals when the lessor is bound to accept them by the Bankruptcy Code. Likewise, there is no duty on the part of a lessor to seek rejection of a lease immediately upon the expiration of the time for assumption set forth in sec. 365(d)(4), and the failure to do so can no more support a waiver or estoppel than can acceptance of rentals. *In re Re-Trac Corp., supra; Accord In re Chandel Enterprises, Inc.,* 64 B.R. 607 (Bankr. C.D.Cal.1986); *In re Spats Restaurant & Saloon,* 64 B.R. 442 (Bankr.D.Nev.1986). Applying the law discussed to the facts of this case, the court finds no more basis for applying estoppel or waiver than an acceptance of rentals and failure to demand a determination that the lease was rejected. There being no ground in the record to support a waiver or estoppel against Homart, the court finds that the lease in question has been deemed rejected by operation of law. 11 U.S.C. sec. 365(d)(4).

The court is of the view that the proceeding presents no legal or factual issues requiring further evidence or argument. The lease was deemed rejected by operation of law on April 9, 1985 and there is no point in further litigation in this court regarding the lease. Debtor's rights under the lease passed from the estate when it was deemed

rejected and the acceptance of rental payments by Homart did nothing to alter the statutorily prescribed result. Thus, Debtor's motion for hearing is denied. The order of the court shall be that Debtor is directed to comply with 11 U.S.C. sec. 365(d)(4), the automatic stay is lifted, and Counsel for Homart is directed to prepare an appropriate form of order.