In re Donald E. AUSTIN, Debtor in Possession,

Diamond Manufacturing Company, Inc., Debtor.

BETHESDA–UNION SOCIETY OF SAVANNAH, INC., Movant,

v.

Donald E. AUSTIN, Diamond Manufacturing Company, Inc., W. Jan Jankowski, Trustee for Diamond Manufacturing Company, Inc. and Signet Commercial Corporation, Respondents.

Bankruptcy Nos. 85–40639, 85–40555.

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

June 30, 1989.

Kathleen Horne, Ashley M. Hodges, Adams, Gardner, Ellis, Inglesby & Falligant, P.C., Savannah, Ga., for movant.

Mr. M. Tyus Butler, Jr., Bouhan, Williams & Levy, Savannah, Ga., for Donald Austin.

George Pahno, Savannah, Ga., for Diamond Manufacturing.

W. Jan Jankowski, Savannah, Ga., for W. Jan Jankowski.

Mr. John M. Tatum, and William F. Hinesley, III, Miller, Simpson & Tatum, Savannah, Ga., for Signet Commercial Credit Corp.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

In accordance with the stipulation of facts entered into by the parties to this action and testimony from the hearing on the motion for relief from stay by Bethesda Union Society of Savannah, Inc. (Bethesda) and the trustee's motion to assume an executory contract, the court makes the following findings of facts and conclusions of law:

### FINDINGS OF FACT

1. Bethesda, a non-profit Georgia corporation which operates a home for boys,

12. O.C.G.A. § 44–13–100(a) (Supp.1989).

owns certain real property identified as 645 Indian Street, Savannah, Georgia.

2. Bethesda obtained an undivided two-third interest in and to the property under an assent to devise to Bethesda under Item VII of the will of Bernard F. Diamond dated September 12, 1975, and recorded in Record Book 105–P, Folio 649 Chatham County records. Additionally, on September 12, 1975 Delores Diamond, the owner of the remaining one third interest, conveyed the remaining interest in the property to Bethesda by warranty deed which deed was recorded on April 19, 1976 in Record Book 106–P, Folio 829, Chatham County records.

3. Bethesda's ownership of the property was subject to a lease agreement originally entered into between Bernard F. Diamond as landlord and B.F. Diamond Construction Co., Inc. (Diamond Construction) as tenant.

4. Paragraph 14 of the lease provided that Diamond Construction possessed the right to assign or sublet the lease at any time without the written consent of the landlord.

5. Pursuant to paragraph 14 of the lease, on February 28, 1977, Diamond Construction entered into an agreement with Diamond Manufacturing Company, Inc. (Diamond Manufacturing), with respect to the lease of the property. The parties cannot agree whether this arrangement is an assignment or a sublease.

6. On May 12, 1983, Diamond Manufacturing assigned its interest in the lease to Signet Commercial Credit Corporation (Signet) as security for debt owed to Signet.

7. On August 29, 1985, Diamond Manufacturing filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code and operated as debtor in possession until the case was converted to a case under Chapter 7 on August 26, 1988. W. Jan Jankowski was appointed trustee in the Chapter 7 proceeding.

8. Diamond Manufacturing as debtor in possession never filed a motion to assume or reject the lease. The trustee filed his motion to assume an executory contract within sixty (60) days of the conversion of the case to a Chapter 7 proceeding.

9. Through mergers and acquisitions, the corporate entity Diamond Construction became the Hardaway Company (Hardaway).

10. Under the terms of the lease, rental payments are Fifteen Thousand and No/100 ($15,000.00) Dollars per year with Seven Thousand Five Hundred and No/100 ($7,500.00) Dollars due on April 1, and Seven Thousand Five Hundred and No/100 ($7,500.00) Dollars due October 1 of each year. Since debtor's bankruptcy filing, Bethesda has received all rental payments of Seven Thousand Five Hundred and No/100 ($7,500.00) Dollars through March 31, 1988. Bethesda has not received a rental payment for the six-month period beginning April 1, 1988, nor the six-month period beginning October 1, 1988. Trustee has attempted to make a tender of Seven Thousand Five Hundred and No/100 ($7,500.00) Dollars and Bethesda has instructed First Union National Bank, its agent, not to accept the rent payment. Hardaway is also holding Seven Thousand Five Hundred and No/100 ($7,500.00) Dollars in rental payment from Diamond Manufacturing which Bethesda has refused to accept.

11. Both Bethesda and Hardaway were generally aware in 1986 or 1987 that Diamond Manufacturing had filed a voluntary petition for relief under the United States Bankruptcy Code.

12. During a period of time in the early 1980's, Diamond Manufacturing made some rental payments directly to Bethesda through First Union. This practice terminated not later than 1985 at the insistence of Bethesda. Following that time, rental payments were made when due by Hardaway, which in turn billed Diamond Manufacturing for the rent due. Notices of rent due were mailed by First Union to Hardaway. Bethesda maintains its landlord-tenant relationship is with Hardaway and not with Diamond Manufacturing.

13. At no time prior to the filing of this motion for relief from stay did either Bethesda or Hardaway make any effort to terminate the lease in question.

14. Hardaway has filed no objections to the trustee's motion to assume this lease agreement.

15. The sole ground upon which Bethesda's motion is founded is the failure of the Chapter 11 debtor to formally accept or reject the lease agreement within the time prescribed by 11 U.S.C. § 365.

16. The fair rental value of the property substantially exceeds the rents called for under the terms of the lease.

17. Debtor, Donald E. Austin (Austin), claims an equitable interest in the lease agreement because of his services to Diamond Manufacturing. Therefore, Bethesda also filed this motion for relief from stay to terminate the lease agreement in Mr. Austin's Chapter 11 case.[1]

## CONCLUSIONS OF LAW

■ The initial question which must be resolved is whether the agreement entered into between Diamond Construction and Diamond Manufacturing is an assignment of a lease or a sublease. The written agreement entered into between the parties is titled an assignment. The terms of the agreement place Diamond Manufacturing in the position of Diamond Construction (now Hardaway) in relation to the original lease agreement. Where the language of a contract is clear and unambiguous, construction of the agreement is not required, or even permissible, when the language employed by the contract is plain, unambiguous, and capable of only one reasonable interpretation. *Merrill, Lynch, Pierce, Fenner & Smith v. Stidham*, 506 F.Supp. 1182 (M.D.Ga.1981). Diamond Construction *assigned* the lease to Diamond Manufacturing; Diamond Manufacturing *assigned* the lease to Signet.[2] Bethesda remained at all times the owner of the property and the holder of the lease, the landlord.[3] Bethesda, therefore, has standing to bring this motion for relief from stay.

■ The basic issue remaining is whether Bethesda has waived its right to assert that the lease has been rejected by the operation of 11 U.S.C. § 365(d)(4).[4] Section 365(d)(4) imposes an affirmative duty on the trustee or debtor in possession to bring a formal motion to assume or reject an unexpired lease on non-residential real property within sixty (60) days after filing a petition for relief under the Bankruptcy Code. Approval of the court is required to assume or reject a lease. *In re: Florida Airlines, Inc.*, 73 B.R. 64 (Bankr.M.D.Fla. 1987); *In re: D'Lites of America, Inc.*, 86 B.R. 299 (Bankr.N.D.Ga.1988). Diamond Manufacturing failed to seek approval within the sixty (60) day time period set forth in § 365. Therefore, by operation of law the lease agreement is deemed rejected.

Some courts have held that this automatic rejection of an executory contract by the operation of law terminates all of a debtor's interest in the executory contract, and therefore, after the expiration of the sixty-day period, the debtor may not assume the

1. The court does not attempt to determine whether Austin has a valid claim of an equitable interest in the lease agreement since the resolution of that issue is not necessary to resolve the question before the court.

2. The assignment of the lease agreement by Diamond Manufacturing to Signet was for the sole purpose of securing debt owed to Signet by Diamond Manufacturing. Therefore, Diamond Manufacturing remains in possession of the property and retains an interest in the property. Signet is a party in this action by virtue of the court granting Signet's motion to intervene to protect its collateral.

3. Although Bethesda insisted on receiving rental payments from Hardaway, and Hardaway agreed to obtain payment from Diamond Manufacturing and remit those proceeds to Bethesda, the written documents filed with the court evidence a valid assignment of all the rights of Diamond Construction under the lease to Diamond Manufacturing. Hardaway holds no interest in the lease.

4. Section 365(d)(4) states: Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of non-residential real property under which the debtor is the lessee within sixty (60) days after the date of the order for relief, or within such additional time as the court, for cause, within such sixty-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such non-residential real property to the lessor.

contract. *See In re: Giles Associates,* 92 B.R. 695 (Bankr.W.D.Tex.1988); *In re: Dial–A–Tire,* 78 B.R. 13 (Bankr.W.D.N.Y. 1987); *In re: Las Margaritas,* 54 B.R. 98 (Bankr.Nev.1985). Bethesda urges the court to adopt this view, deny the trustee's motion as untimely, and require immediate surrender of the premises to Bethesda. Bethesda contends that a creditor cannot waive its rights under § 365 because of the specific rejection language of § 365(d)(4) and the anti-waiver language of § 365(d)(3),[5] which language was added to § 365 by the 1984 amendments.

Section 365(d)(3), however, is not applicable to the facts now before the court. Section 365(d)(3) imposes an obligation on the trustee to timely perform the debtor's obligations under a lease prior to either rejecting or assuming the lease. The genesis of § 365(d)(3) was an understandable impatience with trustee delays in curing defaults and failure to preserve the status quo by making interim payments. 2 Collier on Bankruptcy § 365.03 (15th Ed.1989). The anti-waiver language is meant to affect only the acceptance of the trustee's performance during the period of time allowed by law for the acceptance or rejection of the executory contract. *In re: T.F.P. Resources,* 56 B.R. 112 (Bankr.S.D. N.Y.1985). This language was designed to protect the creditor by retaining the status quo through the trustee's performance while the trustee determined whether it would be in the best interest of the estate to accept or reject the executory contract. Acceptance of performance by a creditor during this period of decision cannot be construed as a waiver of the landlords rights' under the lease or under Title 11.

A distinction must be drawn between this sixty-day time period and the time period for which Bethesda continued to accept rental payments and treat the lease as ongoing in the case now before the court. Bethesda accepted rental payments from the debtor from the time the debtor filed for protection under Title 11 and for more than two years after it had knowledge of the bankruptcy petitions. Bethesda's rights to have the non-residential real property surrendered to them existed sixty (60) days after the debtors filed their petitions. *See* 11 U.S.C. § 365(d)(4). Yet, Bethesda took no action to file a motion with the court to have the property surrendered or to force the debtors to either assume or reject the lease. In fact, Bethesda took no action on the lease until the Chapter 7 trustee filed his motion to assume the lease more than three years after the initial filing.

Binding precedent on this court has held that section 70(b) of the former Bankruptcy Act,[6] which was very similar to § 365(d)(4), was designed for the benefit of the lessor and could be waived by the lessor. *Larkins v. Sills,* 377 F.2d 1 (5th Cir.1967). *See also Entin v. Stevens,* 323 F.2d 894 (8th Cir.1963); *Ten–Six Olive v. Curby,* 208 F.2d 117, 123 (8th Cir.1953). Section 365(d)(4) was also designed for the benefit of the lessor and has the same effect as former section 70(b). *In re: Haute Cuisine,* 57 B.R. 200 (Bankr.M.D.Fla.1986). Thus, when Congress enacted § 365(d)(4) it was well-recognized that a lessor could waive his rights under the sixty-day rule affecting non-residential real property. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic National Bank v. New Jersey Department of Environmental Pro-*

---

**5.** The pertinent language of § 365(d)(3) states: The trustee shall timely perform all the obligations of the debtor ... until such lease is assumed or rejected ... The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.... *Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.* [emphasis added]

**6.** Section 70(b) required a trustee to "assume or reject an executory contract, including an unexpired lease of real property within 60 days after the adjudication ... but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected."

*tection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). "The court has followed this rule with particular care in construing the scope of bankruptcy codifications." *Id.*

Congress did enact amendments in 1984 adding the non-waiver language to § 365(d)(3) after the *Larkins* court recognized the possibility of a waiver. However, in doing so Congress merely carved a very narrow exception, performance during the sixty day period, in the judicially recognized concept of waiver as enumerated in *Larkins.* The non-waiver language of § 365(d)(3) merely prevents the acceptance of performance by the lessor within the sixty (60) day period while the trustee determines whether to assume or reject the lease from constituting an element of a waiver of lessor's rights under the lease agreement or Title 11.[7] The 1984 amendments, § 365(d)(3), do not impact the issue now before this court of whether continued acceptance of performance by the lessor for years after the expiration of the sixty (60) day period may constitute an element of waiver. This court concludes that such acceptance of rental payments may be an element of a waiver of the lessor's rights under § 365.

The right of a lessor to have a lease deemed rejected by operation of law may be waived under appropriate circumstances, and the lessor may be estopped from efforts to dispossess a lessee-debtor if a waiver has occurred. The Eleventh Circuit recognized this possibility of waiver with respect to rejections that have occurred by operation of law. *In re: Ranch House of Orange Brevard,* 773 F.2d 1166, 1168 (11th Cir.1985). Citing *Larkins, supra.*

Whether a waiver has occurred should be a question of intent as manifested by the lessor's acts. *In re: T.F.P. Resources,* supra. "[T]he lessor may waive its right to have a lease rejected if, through its conduct, it evidences an intention to have the lease treated as continuing." *In re:*

*Southern Motel Associates,* 81 B.R. 112, 117 (Bankr.M.D.Fla.1987).

A waiver requires:

(a) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived;

(b) the actual or constructive knowledge thereof, and

(c) an intention to relinquish such right, privilege, advantage, or benefit.

*In re: Haute Cuisine, supra.*

Bethesda's actions in this case have indicated a clear intent to waive the benefits of § 365(d)(4). Bethesda had knowledge of the debtor's bankruptcy petition. Yet, Bethesda continued to accept rental payments during 1986 and 1987, two years after the initial petition was filed. Bethesda took no action to terminate the lease after the expiration of the sixty-day period set forth in § 365(d)(4). The lease agreement was treated as continuing in full effect until late 1988. The debtor had not defaulted under the terms of the lease. Bethesda's election to treat a lease as not rejected may be inferred from the acceptance of rental payments after the lease was deemed rejected by the operation of § 365(d)(4). *In re: T.F.P. Resources, supra.* Bethesda waived its right to assert that the lease had been rejected by the operation of § 365, and therefore have no right to dispossess debtor from the premises.

Wherefore IT IS HEREBY ORDERED that Bethesda's motion for relief from stay having been read and considered is hereby denied. It is further ORDERED that trustee's motion to assume the executory contract is hereby granted.

---

**7.** For a discussion of the legislative history of the 1984 amendments, *see, T.F.P. Resources, su-* *pra.*