**In re VMS NATIONAL PROPERTIES, an Illinois Joint Venture, Debtor.**

**Bankruptcy No. LA 91–65783–GM.**

United States Bankruptcy Court, C.D. California.

Dec. 8, 1992.

Kathryn Koorenny, Oscar Garza, Gibson, Dunn & Crutcher, Irvine, CA, for Property Capital Trust.

Thomas Given, David Klaristenfeld, Murphy, Weir & Butler, Los Angeles, CA, for VMS National Properties.

Jeffrey C. Coyne, Coyne, Miller, Uriarte & Lorch, Pasadena, CA, Bill Cormany, F.D.I.C., Irvine, CA, for F.D.I.C.

Maxine F. Miller, Andrews & Kurth, Los Angeles, CA, for Laguna Hills Property.

Alan I. White, Drummy, King & White, Costa Mesa, CA, for Norman Nemrow, Michael Shatsky & Five Star Management.

Daniel H. Willick, Stephen F. Biegenzahn, Varet, Marcus & Fink, Los Angeles, CA, for Contitrade Service.

Ronald D. Kent, Sonnenschein, Nath & Rosenthal, Los Angeles, CA, for VMS Realty Partners.

Stephen M. Blitz, Gibson, Dunn & Crutcher, Irvine, CA.

Patrick A. Murphy, Murphy, Weir & Butler, Los Angeles, CA.

Marcy J. Tiffany, Los Angeles, CA, U.S. Trustee.

## MEMORANDUM OF OPINION ON MOTION OF DEBTOR TO ASSUME AND ASSIGN NORTHBROOK GROUND LEASE AND MOTION OF LESSOR TO REJECT NORTHBROOK GROUND LEASE

GERALDINE MUND, Bankruptcy Judge.

On October 29, 1992, the Court heard the motion of Property Capital Trust, the Northbrook ground lessor, to reject the ground lease held by VMS National Properties, debtor in this case. Simultaneously, the Court heard the debtor's motion to assume the Northbrook ground lease and to assign it to the F.D.I.C. At that time the Court ruled that 11 U.S.C. § 365(d)(4) does not apply to this case. Both motions were continued to November 12, 1992.

On November 12, 1992, at the time of the continued hearing, the Court reversed its prior ruling on Section 365(d)(4) and held that this provision of the Bankruptcy Code does apply to the ground lease in question. The issue that was then taken under advisement was whether the ground lessor waived the expiration of Section 365(d)(4) by accepting a partial pre-petition cure during July, 1992, and post-petition payments in July and August, 1992. The following memorandum constitutes the findings of this Court.

## ISSUE

Whether Lessor's conduct in accepting payments after the deadline of an order to assume or reject constitutes a waiver of rights under 11 U.S.C. § 365(d)(4) so as to preclude the lessor from raising the argument that the lease has been deemed rejected.

## FACTS

Debtor operates the Northbrook Apartments pursuant to a Ground Lease with Property Capital Trust ("Lessor"), the owner of the property. Periodically, but within the § 365(d)(4) period, the court had extended the deadline to assume or reject leases. The final extension occurred on March 26, 1992, and that extension was through June 30, 1992. No further extension was requested by the debtor or granted by the Court. Since debtor failed to file a motion to assume or request additional time to assume the lease, the time to assume expired. On July 2, 1992, debtor paid the lessor $7,500.00 to cure most of the pre-petition defaults. The July and August rent payments were received and deposited by the Lessor. The September payment was received, but not deposited by the Lessor.

In September, lessor filed a motion to have the lease deemed rejected. Before that motion could be heard, debtor moved to assume and assign the lease to the F.D.I.C., which is also the present beneficiary of a mortgage on the ground lease.

## ANALYSIS

Lessor asserts that the lease was rejected by operation of law on June 30, 1992 because the debtor failed to assume or request an extension of time to assume or reject the lease within the deadline required by this Court. Thus, Lessor argues, the debtor's right to assume and assign the lease was terminated. The case that Lessor cites is *Matter of Chicago, Rock Island and Pacific R. Co.*, 865 F.2d 807 (7th Cir. 1988). There, the court held that the debtor was incapable of conveying any valid contractual interest because the trustee failed to assume debtor's executory con-

tracts in the manner mandated by a court order. However, the court in *Matter of Chicago* did not address the issue under Section 365(d)(4) because the case did not involve a non-residential lease of real property. Nor did the court address the possibility of waiver as a defense. Rather, the case dealt, in part, with the debtor's obligation to make certain repairs pursuant to a contract. The facts and issues surrounding *Matter of Chicago* are quite distinguishable from the present case at bar.

Debtor argues that Lessor waived its right to deem the lease rejected by accepting pre and post-petition payments after the expiration of the deadline to assume or reject. Thus, the debtor argues, this Court has the power to avoid a $5,690,000 windfall to Lessor as a matter of waiver, of relief from forfeiture, or in exercise of its equitable powers.

The case that debtor cites is *In re THW Enterprises, Inc.*, 89 B.R. 351 (Bankr. S.D.N.Y.1988). There, the debtor did not move to assume or reject the lease within the 60 days nor did debtor move to extend its time to do so under Section 365(d)(4). The Lessor there argued that the section must be strictly construed; once the 60 days has expired, nothing may interfere with the re-vesting of the premises in the landlord.

The court in *THW Enterprises* did not agree with the Lessor's interpretation of the code and believed that concepts of waiver and estoppel applied. Thus, the court held that Lessor waived debtor's deemed rejection of the nonresidential lease based on debtor's failure to assume or reject the lease within 60 days of the order for relief because the Lessor accepted 14 months' rent unconditionally and knowingly.

Although the Ninth Circuit has never determined whether waiver and estoppel are or are not available to prevent lease forfeitures, other courts have held that such principles are available to defeat the operation of Section 365(d)(4). *See, e.g., In re Car–Gill, Inc.*, 125 B.R. 133 (Bankr. E.D.Pa.1991) (Landlord, by agreeing to settle its motion to deem lease rejected by debtor contingent only on further agreement as to amount of rent arrearages, voluntarily waived the right to unconditionally evict debtor based on debtor's failure to assume or reject lease within 60 days); *In re Austin*, 102 B.R. 897 (Bankr.S.D.Ga. 1989) (Lessor waived the right to have the lease deemed rejected by debtor's failure to assume within 60 days, where lessor continued to accept rent payments for two years beyond initial 60–day period); *In re T.F.P. Resources, Inc.*, 56 B.R. 112 (Bankr. S.D.N.Y.1985) (Acceptance of rent for two months after the 60–day period for assumption constituted a waiver of the automatic rejection provision); *By–Rite Distributing, Inc.*, 47 B.R. 660, 670, n. 16 (Bankr.D.Utah 1985), *reviewed and remanded sub nom, By–Rite Distributing, Inc. v. Brierley*, 55 B.R. 740 (D.Utah 1985) (In a footnote not germane to the reversed holding in the case, the bankruptcy court noted that principles of waiver and estoppel are available to override section 365(d)(4)).

■ *In re Austin*, supra, at 901 and *In re THW Enterprises, Inc.*, supra, at 356, list the requirements of a waiver: (1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit. To save the lease from forfeiture in the present case, all elements necessary for a waiver must exist.

■ The first element is satisfied after the 60–day period terminates. At that point, there exists a right for the Lessor to force debtor to surrender the premises. The second element is also easily complied with. Although Lessor may argue that it had no knowledge of its statutory rights, the fact that it knew it was dealing with a Chapter 11 debtor placed it on notice. The actual notice of the debtor's bankruptcy constructively imputes the knowledge of the Code and its provisions to the Lessor. *In re THW Enterprises, Inc.*, supra, at 356.

■ The third element is more difficult to determine. The court in *In re Car–Gill,*

*Inc.*, supra, at 139, noted that the Landlord's mere acceptance of rent from debtor after the 60–day period for assuming or rejecting the lease, without more, would not trigger the successful invocation of either waiver or estoppel against it. In determining whether a lessor has waived a forfeiture provision in a lease, the court must ascertain whether there is by the Lessor "conduct evidencing an intent to treat the lease as continuing rather than as terminated." *In re THW Enterprises, Inc.*, supra, at 356. This requires a factual analysis of each case.

In *THW Enterprises* the Lessor had actual knowledge of the reorganization proceedings. For 14 months after the Chapter 11 filing, the Lessor unconditionally and knowingly accepted rent payments. The Lessor did not move to lift the stay or to have the lease declared terminated. Under these facts, the court concluded that the Lessor waived the forfeiture provisions of Section 365(d)(4).

■ In the present case, the distinguishing factor is not the length of time during which the Lessor accepted payments after the court ordered date to assume or reject. Rather it is the fact that the Lessor accepted $7,500.00 to cure pre-petition defaults on July 2, 1992, two days after the time had expired for debtor to assume, or to bring a motion for further extension of time to assume, the lease. This is a very strong indication that the Lessor intended to allow the debtor to assume the lease, since the Lessor was not entitled to the pre-petition rent at that time unless the debtor would be assuming the lease.[1]

■ In the area of real property defaults it is not unusual for the law to determine that if the landlord/lienholder accepts money after declaring a default, then the lessor is deemed to have waived certain rights. For example, under California Code of Civil Procedure Section 1161, a lessor's acceptance of rent after the unlawful detainer action has been filed against the lessee, bars the landlord's right to forfeiture of the lease for the breach of the covenant therein. Cal.Civ.Proc.Code § 1161 (West 1992). Similarly, under California Civil Code Section 2924, a mortgagee's acceptance of delinquent installments constitutes a waiver of mortgagee's right to sell the property under the mortgage. Cal.Civ.Code § 2924 (West 1992). There is every reason to hold a lessor of property subject to § 365(d)(4) to the same strict standard.[2]

The mere fact that the lessor accepted two months of post-petition rents and waited almost 3 months after the deadline set forth in Section 365(d)(4) to bring its motion to have the lease deemed rejected is not sufficient for the Court to conclude that the Lessor has exhibited "conduct evidencing an intent to treat the lease as continuing rather than as terminated." *In re THW Enterprises, Inc.*, supra, at 356. However, the landlord's acceptance of a partial cure of the pre-petition monetary default—even if no other rent was accepted—is enough for the Court to find an intent to allow assumption of the lease and, if it occurs after the § 365(d)(4) period has expired, constitutes a waiver of that expiration.

## CONCLUSION

The Lessor, by its conduct, has waived its right to have the lease deemed rejected under Section 365(d)(4) even though the debtor did not move to assume the lease within the court ordered date to do so. Therefore, the motion to deem the lease rejected is denied.

Property Capital Trust has questioned whether the F.D.I.C. would be willing to cure the defaults under the ground lease and to perform under the lease. While the Court has no doubt that the F.D.I.C. has the ability to cure all defaults and to give adequate assurance of future performance,

---

**1.** The claim for pre-petition rent is an unsecured claim not entitled to priority and may not be paid before other unsecured claims unless the lease is assumed pursuant to 11 U.S.C. § 365(a). If the lease is assumed, § 365(b)(1)(A) requires the Trustee to cure the pre-petition default.

**2.** This is especially apt since § 365(d)(4) holds the lessee to a very strict rule.

it has not actually given those assurances and delineated the cures. To allow the assignment of this lease, the Court must make a finding on these issues. To do so, the Court needs a list from Property Capital Trust as to each default it wishes cured and a response from the F.D.I.C. of its willingness to cure each of these defaults along with a time frame within which this will be done. There also needs to be a commitment by the F.D.I.C. that once the defaults are cured, it will perform in full compliance with the lease.

Property Capital Trust is to provide the F.D.I.C. (and the debtor) with a list of defaults that must be cured. This is to be received by those entities no later than December 15, 1992. The F.D.I.C. is to prepare a written response stating the items that it will cure and the date by which the cure will take place and specifying that it will fully perform under the lease. This response is to be filed, with a copy to Property Capital Trust and the debtor, no later than January 11, 1993. This matter is continued for hearing on the assumption and assignment of the ground lease to January 14, 1993 at 9:00 o'clock A.M.