**In re FOOD BARN STORES, INC., Debtor.**

**Bankruptcy No. 93–40012–2–11.**

United States Bankruptcy Court, W.D. Missouri.

Sept. 13, 1994.

See also 159 B.R. 264.

Laurence Frazen, Bryan Cave, Kansas City, MO, for debtor.

Jerald Meyer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for American Nat.

## ORDER DENYING DEBTOR'S MOTION FOR ORDER AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE AND SUBLEASE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS (STORE NO. 4100) AND SETTLEMENT OF SB PARTNERSHIP'S CLAIMS

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the motion filed by Food Barn Stores, Inc. (Food Barn) on June 23, 1994, for an Order Authorizing Assumption and Assignment of Lease and Sublease Free and Clear of Liens, Claims, Encumbrances and Interests (Store No. 4100) and Settlement of SB Partnership's Claims (Motion) and the subsequent objection filed by Lessor American National Insurance Company (American).

### FACTS

Food Barn filed its voluntary Chapter 11 bankruptcy petition on January 5, 1993. Food Barn has managed the business as a debtor-in-possession, has ceased its operations, and has sold almost all of its properties. Food Barn's remaining non-operating

site (Store No. 4100) is located in the Park Plaza Shopping Center at I-29 and N.W. 64th Street in Kansas City, Missouri. Food Barn leases the premises from American for $15,335.86 per month rent plus common area maintenance (CAM) charges and taxes. SB Partnership subleases the property from Food Barn and Hobby Lobby, Inc. sub-subleases the premises from SB Partnership.

After Food Barn filed its fourth motion to extend the time to assume or reject unexpired leases of nonresidential real property pursuant to 11 U.S.C. § 365(d)(4), the Court extended the time limit to and including May 16, 1994, and ordered Food Barn to continue making all payments under its leases as required by 11 U.S.C. § 365(d)(3), including post-petition rents and post-petition CAM charges. However, Food Barn did not file the present motion to assume and assign the lease and sublease of Store No. 4100 until June 23, 1994.

American objected to the Motion by asserting, in relevant part, that the lease is deemed rejected by operation of 11 U.S.C. § 365(d)(4) because Food Barn failed to assume or reject the lease by May 16, 1994, and requested that the Court deny the Motion. Food Barn responded by contending, in pertinent part, that since the filing of the bankruptcy, American has made no effort to terminate the lease or have the property surrendered, and has treated the lease as valid and continuing in all respects. Food Barn claims that American has waived the deemed rejection of the lease by conduct that is inconsistent with rejection of the lease in that it demanded and unconditionally accepted rent payments after the time limit to assume or reject the lease expired. Food Barn further argues that American waived the deemed rejection by its actual knowledge of Food Barn's efforts to assume and assign the leasehold interest to SB Partnership.

SB Partnership also responded to American's objection by asserting, in relevant part, that American treated the lease as continuing and because American demanded and accepted rental payments under the lease, American is precluded by waiver and estoppel from claiming that the lease is now deemed rejected.

At the hearing held August 24, 1994, Food Barn presented evidence that American accepted the rent payments for the months of June, July, and August and payments for CAM charges for the months of May, June, and July. On June 10, 1994, and again on June 14, 1994, Jerry Meyer, an attorney representing American, had called Cynthia Dillard, an attorney representing Food Barn, demanding that Food Barn pay the late June rent for Store No. 4100. On June 10, 1994, Dillard explained to Meyer that the June rent was late because Food Barn was in a dispute with SB Partnership, and that Food Barn was still in negotiations with SB Partnership regarding the assumption and assignment of the Store No. 4100 lease.

Food Barn also presented a letter dated June 8, 1994, written by The R.H. Johnson Company, the property manager for American, which set forth the total amount due of $13,491 to cure the prepetition debt for unpaid rent for three Food Barn stores including Store No. 4100, and which requested that Food Barn remit the "'blended'" cure amount. However, William Peers testified on behalf of Food Barn and stated that Food Barn has not paid the cure amount and the cure amount will not be paid until the order for assumption and assignment is signed by the Court.

Peers further testified that he first discussed the assumption and assignment of the Store No. 4100 lease to SB Partnership with SB Partnership near the beginning of March 1994 and with The R.H. Johnson Company in April 1994. Peers stated that The R.H. Johnson Company was aware of the sub-sublease to Hobby Lobby, and the Motion was not filed because Food Barn was negotiating with The R.H. Johnson Company. Peers also testified that Food Barn was not sure what it wanted to do with the Store No. 4100 lease during negotiations for other leases.

The parties stipulated that Laurence Frazen, an attorney representing Food Barn, would testify on behalf of Food Barn that on March 8, 1994, he received a telephone call and a follow-up letter from Richard B. Katz, an attorney representing American, inquiring

as to the status of the Store No. 4100 lease. Frazen again spoke with Katz on April 11, 1994, and April 13, 1994, about the possibility of American assuming the lease. The stipulation recited that on April 14, 1994, Katz telephoned Frazen and on behalf of American made an offer of $5000 to $10,000 for the assumption and assignment of the lease to American. Frazen told Katz that Food Barn was talking to SB Partnership regarding an assumption and assignment of the lease, that SB Partnership was willing to pay considerably more for the lease, and that Food Barn intended to assume and assign the lease to SB Partnership unless American could increase its offer. Frazen did not hear from Katz again.

The Court took judicial notice of Food Barn's Third Amended Disclosure Statement For Debtor's Third Amended Plan of Reorganization that was filed on May 17, 1994, in which Food Barn stated "[t]he Debtor has either assumed or rejected all of its nonresidential real property leases."

## DISCUSSION

11 U.S.C. § 365(a) provides that with the court's approval a trustee may assume or reject any executory contract or unexpired lease of the debtor, with exceptions. One of those exceptions is found in 11 U.S.C. § 365(d)(4), which states:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

"The reference to the duty of the trustee specifically applies to a debtor in possession by virtue of 11 U.S.C. § 1107(a)." *In re Re–Trac Corp.*, 59 B.R. 251, 254 (Bankr.D.Minn. 1986).

The bankruptcy courts have described 11 U.S.C. § 365(d)(4) as a " 'substantial trap for the unwary,' " *In re Car–Gill, Inc.*, 125 B.R. 133, 136 (Bankr.E.D.Pa.1991) (quoting 2 Collier on Bankruptcy, ¶ 365.03[3], at 365–32 n. 28b (15th ed. 1990)), and as a provision "which often proves problematic for debtors-in-possession and trustees." *In re Spats Restaurant & Saloon*, 64 B.R. 442, 443 (Bankr.D.Nev.1986).

In *In re Lew Mark Cleaners Corp.*, 86 B.R. 331, 332 (Bankr.E.D.N.Y.1988), the Honorable Conrad B. Duberstein noted that "[t]here appears to be no end in the litigation arising out of 11 U.S.C. § 365(d)(4). Time after time bankruptcy practitioners and debtors-in-possession have tested the equitable powers of the bankruptcy court by failing to follow the requirements of this section." Judge Duberstein continued: "Since the addition of this section in the Bankruptcy Amendments and Federal Judgeship Act of 1984, courts have struggled to find solutions where infractions of the statutory requirements are weighed against the importance of leaseholds to debtors' reorganizations." *Id.*

A trustee or debtor-in-possession must assume or reject nonresidential real property leases within 60 days of the petition for relief. *In re Kroh Bros. Dev. Co.*, 100 B.R. 480, 484 (W.D.Mo.1989). "To comply with this time limitation, a motion [to assume or reject] must be made by the Trustee within the 60–day period, unless the Court extends that time." *Id.* An unexpired lease of nonresidential real property is deemed rejected if the trustee or debtor-in-possession fails to assume or reject within the 60–day period or within the court-extended period of time. *In re S & M Food Serv., Inc.*, 117 B.R. 497, 498 (Bankr.E.D.Mo.1990). Food Barn failed to assume or reject the Store No. 4100 lease by the May 16, 1994, deadline, but claims that American waived the right to have the lease deemed rejected. Now this Court must determine the outcome of Food Barn's infraction of the requirements of 11 U.S.C. § 365(d)(4).

The first issue facing the Court is whether the doctrines of waiver or estoppel apply. American contends that the language of the statute is clear, the lease is deemed rejected because Food Barn failed to assume or reject by the deadline, and the Court cannot apply

waiver or estoppel to resurrect the rejected lease. Food Barn cites several cases, and the Court's research has found additional cases, in which the bankruptcy courts have applied the doctrines of waiver and estoppel to bar a lessor from claiming a lease has been rejected because of the debtor's failure to abide by 11 U.S.C. § 365(d)(4). SB Partnership asserts that cases decided by the Eighth Circuit Court of Appeals in which the appellate court applied Section 70(b) of the Bankruptcy Act, 11 U.S.C. § 110(b) (repealed), and concluded that a lessor could waive its rights under Section 70(b) establish binding precedent for this Court in situations that arise under 11 U.S.C. § 365(d)(4) of the Bankruptcy Code.

Section 70(b) of the Bankruptcy Act states in pertinent part:

> The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected.

In *Ten–Six Olive, Inc. v. Curby,* 208 F.2d 117, 123 (8th Cir.1953), the Eighth Circuit Court of Appeals determined that the 60 day limitation period was inserted in Section 70(b) for the benefit of the lessor and the Court of Appeals could "see no reason why the lessor may not ... waive the right accorded him by the terms of this statute." The Eighth Circuit Court of Appeals concluded in *Entin v. Stevens,* 323 F.2d 894, 899 (8th Cir.1963), that the lessors by their acts and conduct subsequent to the filing of the petition for reorganization had waived their Section 70(b) right to have the lease deemed rejected upon the trustee's failure to assume or reject within the limitation period.

The Court questions whether decisions allowing waiver under Section 70(b) of the old Bankruptcy Act are applicable to the interpretation of 11 U.S.C. § 365(d)(4). However, the Court notes that two bankruptcy courts which have likewise expressed doubt about whether the doctrines of waiver and estoppel allowed under the old Bankruptcy Act have any application in the context of 11 U.S.C. § 365(d)(4) in any event applied the doctrine of waiver when determining the outcome of each case. *Re–Trac Corp.,* 59 B.R. at 257–58; *Spats Restaurant,* 64 B.R. at 445–48.

The Court is guided by the prevailing view among the bankruptcy courts that the doctrines of waiver and estoppel are available in the unusual case to bar a lessor from asserting a deemed rejection by operation of 11 U.S.C. § 365(d)(4). *See, e.g., In re VMS Nat. Properties,* 148 B.R. 942 (Bankr. C.D.Cal.1992); *In re Car–Gill, Inc.,* 125 B.R. 133 (Bankr.E.D.Pa.1991); *In re Austin,* 102 B.R. 897 (Bankr.S.D.Ga.1989); *In re Southern Motel Assoc., Ltd.,* 81 B.R. 112 (Bankr. M.D.Fla.1987); *In re Fosko Mkt., Inc.,* 74 B.R. 384 (Bankr.S.D.N.Y.1987); *In re Senioris Enter., Inc.,* 70 B.R. 79 (Bankr. N.D.Tex.1987).

The Court must now determine whether Food Barn has proven that either waiver or estoppel are applicable here to prevent the deemed rejection under 11 U.S.C. § 365(d)(4). In a post trial memorandum in support of its Motion, Food Barn contends that the doctrines of waiver and estoppel bar American from arguing that the lease is deemed rejected pursuant to 11 U.S.C. § 365(d)(4) because American:

> (a) never filed a motion for determination that the lease was terminated or for eviction of the tenant from the property, (b) took no actions with regard to termination of the lease until after the Debtor filed its motion to assume and assign the lease, (c) demanded and accepted rental payments after the 11 U.S.C. § 365(d)(4) period expired, (d) demanded and accepted CAM charges after the 11 U.S.C. § 365(d)(4) period expired, (e) made written demand upon Food Barn for *cure costs* with regard to the lease, and (f) discussed with the Debtor and its counsel the assumption and assignment of Store No. 4100.

"A waiver is generally defined as an intentional relinquishment of a known right." *Fosko,* 74 B.R. at 389. "It requires '(1) the existence at the time of the waiver [of] a right, privilege, advantage, or benefit

which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage or benefit.'" *Id.* (quoting *Doolley v. Weil (In re Garfinkle),* 672 F.2d 1340, 1347 (11th Cir.1982)). "To determine whether or not there was a waiver we must focus on the landlord's intent as manifested by his acts." *Id.* "[T]hose acts 'should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of [one's] conduct is possible.'" *Spats Restaurant,* 64 B.R. at 446 (quoting *Bechtel v. Liberty Nat. Bank,* 534 F.2d 1335, 1340 (9th Cir.1976)).

■ Here, the Court concludes that Food Barn has failed to prove that American has waived the deemed rejection. The Court finds no "'conduct evidencing an intent to treat the lease as continuing rather than as terminated.'" *VMS Nat. Properties,* 148 B.R. at 945 (quoting *In re THW Enter., Inc.,* 89 B.R. 351, 356 (Bankr.S.D.N.Y.1988)). First, "[t]he decisions are many which hold that even after the lease is deemed rejected, the landlord may freely accept use and occupation payments from a holdover debtor without waiving the deemed rejection." *Fosko,* 74 B.R. at 389. "Presumptively the proper compensation for use and occupation is the amount of rent as fixed in the lease." *Wiemeyer v. Koch,* 152 F.2d 230, 234 (8th Cir. 1945). American was entitled to payment from Food Barn for Food Barn's use and occupation of the premises after the lease was deemed rejected under 11 U.S.C. § 365(d)(4). American did not waive the deemed rejection by demanding that Food Barn pay rent for the month of June. Further, American has not waived the deemed rejection by its acceptance of three months of rental payments and CAM charge payments after the deemed rejection of the lease.

■ Second, "there is no duty on the part of a lessor to seek rejection of a lease immediately upon the expiration of the time for assumption set forth in sec. 365(d)(4), and the failure to do so can no more support a waiver or estoppel than can acceptance of rentals." *Senioris,* 70 B.R. at 82. *See also VMS Nat. Properties,* 148 B.R. at 945. American was under no duty to seek termination of the lease immediately after the deemed rejection occurred. American filed its objection to Food Barn's motion for assumption and assignment of the lease on July 5, 1994, less than two months after the deemed rejection occurred, which shows an intent to treat the lease as terminated. *See VMS Nat. Properties,* 148 B.R. at 945. This ground for waiver fails.

■ Third, the mere demand for cure payments will not support a waiver. However, if Food Barn had paid and American had accepted cure payments of the prepetition rental default after the 11 U.S.C. § 365(d)(4) period had expired, that would have been enough for the Court to find an intent by American to allow assumption of the lease and would constitute a waiver of the expiration period. *See VMS Nat. Properties,* 148 B.R. at 945. Here, Peers testified that Food Barn would not pay the cure amount until the order for assumption and assignment of the lease was signed by the Court. American's demand for cure payments was, in effect, futile. Suffice it to say that the protection of the Bankruptcy Code is for the needy, not the greedy. Food Barn would not pay the cure but claims assertion of a right thereto creates waiver, a classic case of "eating the cake and having it too".

■ Finally, the discussions between Food Barn and American concerning assumption and assignment of the Store No. 4100 lease will not support a waiver. Any communication by Food Barn of its intent to assume and assign the lease was insufficient to assume the lease. *See Kroh Bros. Dev. Co.,* 100 B.R. at 484. Peers testified that Food Barn was not sure what it wanted to do with the Store No. 4100 lease. The egregious factual situations present in those cases in which the bankruptcy courts have found waiver of the 11 U.S.C. § 365(d)(4) time period based upon communications between the lessor and the debtor are not present here. *See Car–Gill,* 125 B.R. at 139 (the landlord expressed a willingness to allow the debtor to belatedly assume the lease which caused the debtor to make a loan to effect substantial renovations to the premises; the debtor was induced to make expensive and substantial

repairs to the premises in reliance upon the landlord's assumption of the lease). *In re J. Woodson Hays, Inc.*, 69 B.R. 303, 309 (Bankr.M.D.Fla.1987) (after debtor filed for relief under Chapter 11, landlord and debtor engaged in negotiations in which debtor clearly stated its intention to assume the lease and landlord stated that debtor could continue under the lease provided that the rent was paid currently and all arrearages in rent were paid; debtor executed a promissory note to landlord in which debtor agreed to pay $1000 per month in addition to the regular monthly rent called for by the lease in order to cure the rent arrearage); *In re Haute Cuisine, Inc.*, 57 B.R. 200, 204 (Bankr.M.D.Fla.1986) (landlord caused the debtor to believe that the prospective assignee would be acceptable to the landlord; the lease assignment would be executed concomitantly with the debtor's dismissal of its Chapter 11 petition; landlord knew that debtor had not filed a motion to assume the lease, but continued to participate in the negotiations with the prospective assignee and stated that if an agreement was reached it would not insist on dismissal; debtor relied on landlord's conduct).

The circumstances in this case are akin to the situation confronting the bankruptcy court in *In re Capellen*, 39 B.R. 40, 41 (Bankr.S.D.Fla.1984), in which the trustee failed to assume the lease by the deadline in 11 U.S.C. § 365(d)(4) because of "a delay in the negotiations with the prospective purchaser." The court denied the trustee's request to assume the lease because the delay was "in no way attributable to the landlord." *Id.* Here, American had made its offer to Food Barn regarding assumption and assignment of the Store No. 4100 lease on April 14, 1994, but was told by an attorney representing Food Barn that Food Barn was negotiating with SB Partnership concerning assumption and assignment of the lease. As of June 10, 1994, Food Barn was still engaged in negotiations with SB Partnership regarding the assumption and assignment of the lease. It appears that the delay in filing the Motion was not attributable to American, but was the result of the ongoing negotiations between Food Barn and SB Partnership.

Although Food Barn has failed to prove that American waived the deemed rejection under 11 U.S.C. § 365(d)(4), the Court will examine the doctrine of equitable estoppel to see if that principle applies to bar American from asserting the deemed rejection. Estoppel is "an equitable principle based on acts or conduct of the party against whom it is sought to be invoked." *Fosko,* 74 B.R. at 389. In *Spats Restaurant* the Honorable James H. Thompson described the doctrine as:

> standing for the principle that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. *Spats Restaurant,* 64 B.R. at 446 (quoting *Hass v. Darigold Dairy Prod. Co.,* 751 F.2d 1096, 1099–1100 (9th Cir.1985)).

"Estoppel requires '(1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated.'" *Fosko,* 74 B.R. at 390 (quoting *Doolley v. Weil (In re Garfinkle),* 672 F.2d 1340, 1346–47 (11th Cir.1982)).

As the foregoing discussion concerning waiver reveals, there is nothing in American's conduct that reasonably or justifiably might have caused Food Barn to believe that American was agreeing to a relaxation of the requirements of 11 U.S.C. § 365(d)(4). *See Fosko,* 74 B.R. at 390; *Spats Restaurant,* 64 B.R. at 447. Food Barn has failed to prove that estoppel applies to prevent the deemed rejection under 11 U.S.C. § 365(d)(4).

Because the Store No. 4100 lease is deemed rejected under 11 U.S.C. § 365(d)(4), the Court is without authority to authorize assumption by Food Barn or an assignment to SB Partnership. *See In re Las Margaritas, Inc.,* 54 B.R. 98, 100 (Bankr.D.Nev.1985).

### CONCLUSION

Based on the above discussion, Food Barn's Motion for Order Authorizing Assumption and Assignment of Lease and Sublease Free and Clear of Liens, Claims, Encumbrances and Interests (Store No. 4100) and Settlement of SB Partnership's Claim is hereby DENIED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.